These transactions occurred at or before she attained her majority.

"Q. Do you say the same of your account as guardian,—the history of your administration up to the time when she became of age? A. Yes, sir."

At page 78 the ward testified:

"My mother always treated me very kindly, but I thought it strange that I never had anything, or any money. After I was of age, I asked my mother about it. I never asked before. Q. What did she tell you when you became of age? Did she show you the account? A. No; she only said she spent all upon living."

It appears by this testimony that subsequent to the attainment of her majority, the guardian and ward had a conversation concerning the accounts of her mother, and the mother stated that she had expended the entire fund. All the other circumstances surrounding the case negative the idea that the trustee was guilty of any fraud or concealment which would prevent the repudiation from having its legitimate effect. The accounts were always open to her inspection, and, notwithstanding her statement that she did not examine the same, it is apparent from other portions of the testimony that she knew their contents, and was aware that in some instances her mother had charged against her sums as low as 5 or 10 cents. She could not have known this without, to some extent, having examined the account. I am therefore of opinion that the referee's report must be overruled, and the proceedings dismissed, upon the ground that the statute of limitations runs against the claim.

---

## PEOPLE v. STOKES et al.

### (Court of General Sessions, New York County. May 17, 1893.)

1. **CRIMINAL LIBEL—COMPETENCY OF COMPLAINANT—CONVICT.**

   Under Pen. Code, § 714, which makes a person convicted of a felony a competent witness in any cause or proceeding, civil or criminal, such a person is not incompetent as complainant in a criminal libel suit.

2. **SAME—INDICTMENT—DEMURRER—PRIVILEGED COMMUNICATION.**

   Pen. Code, § 253, provides that a communication made to a person entitled to or interested in it, by one who was also interested in or entitled to make it, or who stood in such a relation to the former as to afford a reasonable ground for supposing his motives innocent, is presumed not to be malicious, and is called a "privileged communication." *Held,* that such presumption is not conclusive, but may be overcome by proof, and therefore it cannot be determined on demurrer to an indictment whether or not the libel set out therein was published in good faith.

3. **SAME—SUFFICIENCY OF INDICTMENT.**

   Under Code Crim. Proc. § 289, providing that an indictment for libel need not set forth any extrinsic facts for the purpose of showing the application to the party libeled of the defamatory matter, but may state generally that it was published concerning him, an indictment need not show by explanatory matter the application to complainant of a vague and uncertain defamatory letter set out therein, and on which the libel is predicated.

William E. D. Stokes and William R. Martin were indicted for libel. Defendant Stokes demurred to the indictment, and defendant Martin moved to dismiss. Demurrer overruled, and motion denied.

De Lancey Nicoll, Dist. Atty., and John D. Lindsay, for the People.

Holmes & Adams, (George H. Adams, of counsel,) for defendants.

COWING, J. By an indictment filed in this court on the 25th day of April, 1893, the defendants are charged with committing a criminal libel. On the 8th of May, the defendant Stokes filed a demurrer to the indictment, which, if sustained, the defendant Martin claims must inure equally to his benefit. The demurrer sets forth two distinct grounds of objection to the indictment: First, that the facts therein stated do not constitute a crime; second, that upon the face of the indictment the alleged libelous matter appears to be privileged, and therefore not criminal. Upon the argument of the demurrer, the counsel for the defendant Martin, by way of motion, moved to dismiss the indictment, upon the ground that the complainant, having been convicted and sent to state's prison for a felony, is disqualified to testify as a witness, and is also thereby rendered incompetent to be a complainant in a criminal libel suit. Without passing upon the regularity of defendant Martin's motion, I am of the opinion that his objections to the indictment are not tenable. Section 714 of the Penal Code expressly provides that a person convicted of a felony is no longer, as at common law, rendered incompetent to testify as a witness, but this section expressly makes him a competent witness in any cause or proceeding, civil or criminal, leaving his conviction to be proven against him to affect his credibility only. This express provision of law makes it unnecessary for me to refer to the effect a pardon has in restoring a convicted felon to competency as a witness. A criminal libel is prosecuted in the name of the people, not for the purpose of redressing an injury done to an individual, but is so prosecuted and punished as a crime, for the reason that it tends to provoke animosity and violence, and to disturb the public peace and repose, and certainly it will not be for a moment contended that the threatened danger to the public peace is not as great when the person libeled is a bad man as when he is a good man. In a civil action, brought by an individual to obtain satisfaction for an injury to his reputation, caused by the publication of a libel, the bad reputation of the complainant becomes material as affecting the measure of damages, while in a criminal action brought in the name of the people the individual libeled, so far as personal redress and satisfaction are concerned, is not considered. By the demurrer the defendant Stokes claims that it appears upon the face of the indictment that the alleged libel is privileged, and therefore not criminal. This contention of the defendant is predicated upon section 253 of the Penal Code, which reads as follows:

"A communication made to a person entitled to or interested in the communication by one who was also interested in or entitled to make it, or who

stood in such a relation to the former as to afford a reasonable ground for supposing his motives innocent, is presumed not to be malicious, and is called a privileged communication."

Undoubtedly a written defamatory statement published against a person in good faith and without malice, under the circumstances stated in section 253 of the Penal Code, does not constitute a criminal libel; and if the grand jury should find an indictment upon such a statement, charging its publication to be a criminal libel, the defendant would be entitled to an acquittal by the trial jury, but the court cannot, as matter of law, and without evidence, find that such statement is true, and was published in good faith and without malice. To be sure, said section provides that a written statement, published under the circumstances therein defined, is presumed to be published without malice, yet this is not a conclusive presumption, any more than the legal presumption that a person is innocent or sane and accountable for his act. It merely stands as a fact proven, in the absence of any evidence to the contrary. Therefore, whether the statement referred to in the indictment is privileged or not under said section 253 can only be determined upon the trial upon the merits, where evidence pro and con can be adduced. The law does not permit one in bad faith, even under the circumstances mentioned in said section, to publish an untrue statement, to another's injury, and the people have an undoubted right to show, if they can, by evidence, that the statement is untrue, or that it was published in bad faith and with malice, which cannot be done upon the trial of a demurrer, but only upon the trial upon the merits before a jury.

The contention of the defendants that the alleged defamatory letter is vague and uncertain, and that the indictment is defective for the reason that it does not set forth any explanatory matter showing its application to the complainant, is fully answered by section 289 of the Code of Criminal Procedure, which provides that "an indictment for libel need not set forth any extrinsic facts for the purpose of showing the application to the party libeled of the defamatory matter on which the indictment is founded; but it is sufficient to state generally that the same was published concerning him, and the fact that it was so published must be established on the trial." This indictment avers that the alleged defamatory letter was published concerning the complainant; and if it does not clearly so appear by the letter itself, under this section of the Code it becomes matter of evidence, and not of pleading, to make it so appear.

The further contention of the defendants is that the indictment is fatally defective, for the reason that the averment of publication only shows that it was made by sending it to the complainant himself, and that, under the circumstances of this case, this is no publication at all. It will appear on inspection of the indictment that there is an allegation that the letter in question was sent to a third party, to wit, George W. Cornish, and, if the jury should find

that the said letter was not a privileged communication, then the sending of it to Cornish would be a complete publication.

The defendants further claim and insist that the alleged defamatory letter contains no matter which is libelous per se as against the complainant. As to whether this contention is true or not, I think there is at least enough doubt about it to make it a question of fact for the jury instead of a question of law for the court.

Undoubtedly most of the questions raised upon the demurrer and the motion to dismiss may be again raised on the trial upon the merits, where they can be more properly disposed of than upon a demurrer or a motion to dismiss. The motion to dismiss is denied, and judgment ordered for the people on the demurrer, with leave to the defendants to answer over.